IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

JEFFERSON COUNTY COMMISSION;
PATRICIA NOLAND; as an individual
and on behalf of all others similarly situated,
and DALE MANUEL; as an individual and
on behalf of all others similarly situated,

        Plaintiffs,

v.                                                      Civil Action No. 3:11-CV-96
                                                      (KING, BAILEY, BERGER)

NATALIE E. TENANT, in her capacity as
the Secretary of State; EARL RAY TOMBLIN,
in his capacity as the Chief Executive Officer
of the State of West Virginia; JEFFREY KESSLER,
in his capacity as the Acting President of the
Senate of the West Virginia Legislature; and
RICHARD THOMPSON, in his capacity as the
Speaker of the House of Delegates of the
West Virginia Legislature,

        Defendants.

## ORDER GRANTING THORNTON COOPER'S MOTION TO INTERVENE AS PLAINTIFF

Pending before this Court is Thornton Cooper's Motion to Intervene as Plaintiff [Doc. 8], filed November 22, 2011. Specifically, Cooper moves for an order allowing him to intervene in this action as a party plaintiff pursuant to Rule 24 of the Federal Rules of Civil Procedure and to file his Complaint in Intervention attached as an exhibit to his motion. To date, neither the defendants nor the plaintiffs have filed a response. For the reasons that follow, this Court will **GRANT** the motion.

## BACKGROUND

This action challenges the constitutionality of the West Virginia Legislature's recent reapportionment of the congressional districts for the State's delegation to the United States House of Representatives. Residents from the Second Congressional District contend that the new reapportionment has diluted their vote.

Based upon the 2010 Census, West Virginia was assigned three seats in the U.S. House of Representatives in accordance with the U.S. Constitution. During the spring and summer of 2011, the West Virginia State Senate Redistricting Committee ("SSRC"), chaired by State Senator John Unger, II, held a number of public hearings across the state to obtain public comment on redistricting the congressional districts. Following the conclusion of these hearings, the First Extraordinary Session of the 2011 Legislature was convened. On August 5, 2011, the Legislature passed Senate Bill No. 1008, which amended W.Va. Code § 1-2-3 by moving Mason County from the Second Congressional District to the Third Congressional District. The bill was subsequently signed into law by then Acting Governor Earl Ray Tomblin.

Pursuant to Enrolled Senate Bill No. 1008, West Virginia is divided as follows. The First Congressional District, with a population of 615,991, consists of Barbour, Brooke, Doddridge, Gilmer, Grant, Hancock, Harrison, Marion, Marshall, Mineral, Monongalia, Ohio, Pleasants, Preston, Ritchie, Taylor, Tucker, Tyler, Wetzel, and Wood Counties. The Second Congressional District, with a population of 620,862, consists of Berkeley, Braxton, Calhoun, Clay, Hampshire, Hardy, Jackson, Jefferson, Kanawha, Lewis, Morgan, Pendleton, Putnam, Randolph, Roane, Upshur, and Wirt Counties. The Third Congressional District, with a population of 616,141, consists of Boone, Cabell, Fayette,

Greenbrier, Lincoln, Logan, Mason, McDowell, Mercer, Mingo, Monroe, Nicholas, Pocahontas, Raleigh, Summers, Wayne, Webster, and Wyoming Counties. As reapportioned, the Second Congressional District is the most populous of the three districts, exceeding the population of the First Congressional District by 4,871.

Pursuant to W.Va. Code § 3-5-7(c), all West Virginia candidates for the U.S. House of Representatives must file their respective "certificates of announcement" no earlier than January 9, 2012, and no later than January 28, 2012.

On November 4, 2011, the Jefferson County Commission, Patricia Noland, and Dale Manuel (collectively, the "Jefferson County residents" or the "plaintiffs") sued the above-named defendants in the United States District Court for the Northern District of West Virginia, Martinsburg Division. The Complaint [Doc. 1] contains three counts. In Count I, the plaintiffs claim that the congressional districts violate the United States Constitution, including the Equal Protection Clause of the Fourteenth Amendment, "by depriving [them] and all other citizens in West Virginia's Second Congressional District by placing them in an overpopulated congressional district and thus diluting their vote." (Id. at ¶ 34). In Counts II and III, the plaintiffs claim that the congressional districts violate the West Virginia Constitution. First, the plaintiffs assert that the variance in population between the Second and First Congressional Districts violates Article I, Section 4 of the West Virginia Constitution, which requires that the congressional districts "contain as nearly as may be, an equal number of population." (Id. at ¶¶ 37-38). Second, the plaintiffs allege that the size of the Second Congressional District, which "runs the entire width of the State from Jefferson County, in the tip of the Eastern Panhandle to Jackson County, on the Ohio River," violates the same provision, which also requires that the congressional districts

3

"shall be formed of contiguous counties, and be compact." (Id. at ¶¶ 40-41). As relief, the plaintiffs ask this Court to, *inter alia*, convene a three-judge panel pursuant to 28 U.S.C. § 2284, declare the existing congressional districts unconstitutional, and adopt a plan offered in the Legislature that is most compact and has the least variance in population. (Id. at 7-8).

On November 22, 2011, Thornton Cooper filed the instant Motion to Intervene as Plaintiff [Doc. 8]. In support of his request for intervention pursuant to Rule 24 of the Federal Rules of Civil Procedure, Cooper states as follows. First, as a resident of Kanawha County and the Second Congressional District, Cooper agrees with the Jefferson County residents' claim that the existing congressional districts dilute the votes of Second Congressional District residents. (Id. at 2). However, Cooper claims that "he is so situated that the disposition of this action may, as a practical matter, impair or impede his ability to protect his interests because [the Jefferson County residents] do not . . . adequately protect his interests." (Id.). For example, Cooper explains that "[he] desires to offer several redistricting plans to this Honorable Court that would not split Kanawha County between or among different congressional districts," but that "[h]e is concerned that the plan or plans to be offered to this Court by [the Jefferson County residents] may involve the division of Kanawha County between or among different congressional districts." (Id.).

Along with his motion, Cooper attaches his proposed Complaint in Intervention [Doc. 8-1] wherein he alleges causes of action and requests relief nearly identical to the plaintiffs. Unique to his Complaint, Cooper asks this Court to "require Defendant Natalie Tenant to conduct the 2012 primary and general elections under the congressional districts set forth in one of the three (3) redistricting plans [he has] already submitted to the SSRC . . . or in

one or more plans that he may submit to the three-judge court during this litigation." (Id. at 8).

## DISCUSSION

I. <u>Applicable Standards</u>

A. **Intervention of Right**

Pursuant to Rule 24(a), "the court <u>must</u> permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a) (emphasis added).

B. **Permissive Intervention**

Pursuant to Rule 24(b), "the court <u>may</u> permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that share with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1) (emphasis added). Under this same section, "the court <u>may</u> permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." Fed. R. Civ. P. 24(b)(2) (emphasis added). Finally, in determining whether permissive intervention is proper, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## II. Analysis

In his motion, Cooper appears to argue that he has a right to intervene pursuant to Rule 24(a)(2). (See [Doc. 8] at 2). To intervene under this provision, an absentee must satisfy three elements, namely that: (1) the absentee claims an interest relating to the property or transaction that is the subject of the action, (2) the absentee is so situated that the disposition of the action may as a practical matter impair or impede the absentee's ability to protect that interest, and (3) the existing parties do not adequately represent the absentee's interest. See Fed. R. Civ. P. 24(a)(2). The Court will consider each element in turn.

### A. Sufficient Interest

First, Cooper argues that he has an interest relating to the subject matter of this civil action. This Court agrees.

"Registered voters have . . . a sufficiently substantial interest to intervene, in an action challenging the voting district in which the voters are registered." *Johnson v. Mortham*, 915 F.Supp. 1529, 1536 (N.D. Fl. 1995) (citing *Meek v. Metropolitan Dade County, Fla*, 985 F.2d 1471, 1480 (11th Cir. 1993)). As a registered voter in the Second Congressional District, therefore, Cooper undisputably has a sufficiently substantial interest to intervene in an action that challenges the constitutionality of that district. Accordingly, this Court finds that the first element is satisfied.

### B. Effect of the Action on the Interest

Next, Cooper argues that he is so situated that the disposition of this civil action may as a practical matter impair or impede his ability to protect his voting interest in the Second Congressional District. This Court agrees.

6

The focus of this requirement is whether the absentee will be practically disadvantaged if not permitted to intervene, not whether the absentee will be legally bound as a matter of *res judicata*. See **Spring Constr. Co. v. Harris**, 614 F.2d 374 (4th Cir. 1980). However, several courts have held that *stare decisis* by itself supplies the practical disadvantage that is required for intervention under Rule 24(a)(2). See **Stone v. First Union Corp.**, 371 F.3d 1305 (11th Cir. 2004).

In the instant case, resolution of the dispute between the Jefferson County residents and the defendants may affect the composition of the State's congressional districts, including Cooper's district and county. If not granted intervention, Cooper would be forced to bring a separate action concerning the same subject of the Jefferson County residents' action – the composition of the State's congressional districts. Consequently, Cooper faces a potential disadvantage in the form of the *stare decisis* effect of any decision regarding the proposals of alternative redistricting to be offered in the Jefferson County residents' action. In addition, due to the impending deadlines for individuals to announce their candidacy for the U.S. House of Representatives, Cooper faces the practical disadvantage of bringing a subsequent suit too late to affect the 2012 elections, unless he is permitted to intervene. Accordingly, this Court finds that the second element is satisfied.

C.  **Adequacy of Representation**

Finally, Cooper argues that the Jefferson County residents' action will not adequately represent his interests. This Court agrees.

"[P]rospective intervenors must show that the existing defendants may not adequately represent its interests. However, proposed intervenors are not required to show that the representation will in fact be inadequate. Proposed intervenors are required

7

only to show that the representation might be inadequate. Indeed, it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments. The proposed intervenors' burden in showing inadequacy is minimal. The proposed intervenors need only show that there is a potential for inadequate representation." **Blount-Hill v. Ohio**, 244 F.R.D. 399, 403-04 (S.D. Ohio 2005) (internal quotations and citations omitted).

In the instant case, Cooper has undoubtedly met his minimal burden by showing that there is at least a potential that the Jefferson County residents will provide inadequate representation of his interests. Specifically, Cooper expresses concern that though he and the Jefferson County residents commonly challenge the constitutionality of the newly enacted congressional districts, only he plans to offer suitable redistricting alternatives that do not involve the division of Kanawha County. Accordingly, this Court finds that the third element is satisfied. As a result, this Court will permit Cooper to intervene in this action as a matter of right pursuant to Rule 24(a)(2). As such, this Court need not decide whether the requirements for permissive intervention are satisfied.

## CONCLUSION

For the foregoing reasons, this Court finds that Thornton Cooper's Motion to Intervene as Plaintiff **[Doc. 8]** should be, and hereby is, **GRANTED**. Accordingly, Cooper is hereby **ORDERED** to file forthwith his Complaint in Intervention. In this regard, Cooper is also **ORDERED** to file his three (3) alternative redistricting plans mentioned in the tenth paragraph of his proposed Complaint in Intervention.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: November 30, 2011.

*[signature: Cheryl Dean Riley]*
CHERYL DEAN RILEY
CLERK OF COURT

Entered at the direction of Chief Judge Bailey, with the concurrences of Circuit Judge King and District Judge Berger.